UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:22-CV-00065-JHM

JOE A. BROWDER, JR.     PLAINTIFF

V.

HOPKINS COUNTY, *et al.*     DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Joe Browder's, Defendant Western Kentucky Correctional Health's, Defendants Mike Lewis and Hopkins County's, and Defendant Scott Wilson's motions for summary judgment, [DNs 50–52, 76], as well as Mr. Browder's motion to amend his pleadings to add another defendant. [DN 61]. All fully briefed, these motions are ripe for decision. For the following reasons, the Defendants' motions are **GRANTED**, Mr. Browder's motion for summary judgment is **DENIED**, and Mr. Browder's motion to amend is **DENIED**.

### I. BACKGROUND

Plaintiff Joe Browder ("Mr. Browder") was held as a pretrial detainee at Hopkins County Jail from April 8 to June 13, 2022. [DN 51-1 at 2]. While he was in jail, he wished to continue taking a long list of medications that a Department of Veterans Affairs ("VA") doctor prescribed to him for various physical and mental ailments. [DN 1 at 4]. For example, Mr. Browder suffers from glaucoma, for which he was prescribed eyedrops. [*Id.*]. A VA doctor had also recommended that Mr. Browder get surgery to relieve back pain, and he wished to undergo that surgery while he was in jail. [*Id.*]. But Mr. Browder did not receive most of the medications on his prescription list. [*Id.* at 5, 8–9]. The jail's nurses—employees of Hopkins County Jail's private medical contractor, Defendant West Kentucky Correctional Healthcare ("WKCH")—advised Mr. Browder that this was because the jail only provides inmates with life-sustaining medications, and WKCH's

medical professionals did not deem any of his prescriptions to be medically necessary to keep him alive. [*Id.* at 8; *see* DN 55 at 8]. They told him he could still get his meds if his family or someone from the outside brought them to the jail for him. [DN 1 at 24; DN 6 at 6]. They also informed him he would not be able to get the recommended back surgery unless his attorney asked a court to grant him medical leave; WKCH nurse Whitley Adams told him "don't wait until you come to jail to have surgery" and "we're not going to pay for it." [DN 1 at 8]. Mr. Browder used the jail's grievance system to make several pleas to receive his requested medication and be allowed to get back surgery, but none of his requests were granted before he was released. [*See* DN 1; DN 6]. The lack of medication and surgery caused him pain and discomfort. [DN 1 *passim*; DN 58 at 2]. Mr. Browder did, however, receive multiple medical visits and undergo procedures such as x-rays while in jail, for which WKCH charged him, an indigent person small amounts of money. [DN 1 at 24].

Mr. Browder filed his Complaint *pro se* on May 25, 2022 while he was still housed at Hopkins County Jail. [DN 1]. He named as defendants Hopkins County, Hopkins County Jailer Mike Lewis ("Jailer Lewis"), WKCH, Hopkins County Jail medical director Scott Wilson ("Dr. Wilson"), WKCH nurse Whitley Adams ("Nurse Adams"), and WKCH nurse Leigh Garrett ("Nurse Garrett"). [*Id.*]. The Complaint contains both state-law claims and those involving deprivations of federal rights under color of state law, pursuant to 42 U.S.C. § 1983. [*Id.*]. He also filed an "amendment to complaints" a week before he was released, covering events that happened after he filed his initial Complaint. [DN 6]. Mr. Browder moved for summary judgment on all his claims on December 2, and Jailer Lewis, Hopkins County, and WKCH filed cross-motions for summary judgment shortly thereafter. [DNs 50–52]. Dr. Wilson was not properly served until this past June, [DN 75], and he moved for summary judgment shortly thereafter. [DN

2

76]. Nurse Adams and Nurse Garrett were also not properly served until months after Mr. Browder filed for summary judgment. [DNs 73–74]. They have only recently answered Mr. Browder's Complaint, [DNs 78–79], and they have not moved for summary judgment at this time.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the

3

summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings, and a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

#### A. Mr. Browder's Prayers for Declaratory and Injunctive Relief Are Moot

Mr. Browder requests declaratory and injunctive relief in his motion, stating that the Defendants continue to violate the law and that they "affected and will continue to affect me and also virtually every Hopkins Count Jail Prisoner." [DN 50 at 1]. But Mr. Browder is no longer impacted by anything that happens at Hopkins County Jail because he has not been housed there since June. [*See* DN 51-1 at 2]. Because he is out of jail, Mr. Browder's requests for declaratory and injunctive relief are moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner's claim for declaratory and injunctive relief became moot when he was transferred to another facility). And because this is not a class action lawsuit and no other Hopkins County Jail inmates are before the Court, it cannot grant them any relief; even if it were class action, Mr. Browder would not be an adequate class representative. *See Leonard v. White*, No. 2:07–CV–13226, 2010 WL 2232345, at *2 (E.D. Mich. June 2, 2010) ("Numerous cases have held that a

prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action."); *Alexander v. N.J. State Parole Bd.*, 160 F. App'x 249, 250 n.1 (3d Cir. 2005) (holding that "a prisoner proceeding pro se may not seek relief on behalf of his fellow inmates").

### B. Claims Against Hopkins County

Mr. Browder is suing Hopkins County for "failure to monitor" the quality of WKCH's medical care, "failure to implement" Kentucky law, "use of . . . unconstitutional policies/customs," and that WKCH's unconstitutional policies and acts are imputed to Hopkins County because WKCH is "an 'arm' of the jail." [DN 1 at 21–23; DN 57 at 3]. To the extent that these are federal § 1983 claims, because Mr. Browder is suing a municipality, he must show that one of the municipality's policies or customs caused the alleged deprivations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The municipality "may not, however, be sued simply because [it] employed an officer who committed a constitutional tort." *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 451 (6th Cir. 2020) (citing *Monell*, 436 U.S. at 691). Further, a jail's private medical contractor's policies cannot be imputed onto the municipality it contracts with. *See Boldry v. Henderson Cnty. Det. Ctr.*, No. 4:16CV-P88-JHM, 2017 WL 489425, at *4–5 (W.D. Ky. Feb. 6, 2017). In *Boldry*, an inmate sued a county jail after nurses employed by its private medical contractor refused to give him acid reflux medicine pursuant to the contractor's policy. *Id.* at *1. This Court dismissed the claim against the county because the inmate alleged that the contractor's policy caused him harm, not the county's or the jail's. *Id.* at *5.

Here, Mr. Browder has not pointed to any Hopkins County Jail policy that could have caused the harms he complains of. If Mr. Browder is arguing that Hopkins County is liable for WKCH's allegedly unlawful policies, then his argument fails because those policies cannot be imputed onto the county. *See Boldry*, 2017 WL 489425, at *5. As in *Boldry*, where this Court

5

dismissed the county from the suit because the inmate alleged that the private medical contractor's policy was harming him, Mr. Browder's federal claims against Hopkins County are dismissed because he alleges WKCH's policies are harming him, not the county's. *Id.*; [DN 1 at 8, 24].

Similarly, Mr. Browder's state law claims for failure of Hopkins County to implement KRS § 441.045(3), (8), and (12) and 501 KAR 7.140 through the contracted jail medical provider West Ky. Correctional Healthcare are barred by sovereign immunity. *See New Albany Main St. Prop. v. Watco Co., LLC*, No. 22-5351, 2023 WL 4777172, at *6 (6th Cir. July 27, 2023) ("The 'pure' version of sovereign immunity applies to a narrow set of state entities that qualify for immunity without the need to prove anything else. . . . This version unsurprisingly covers Kentucky itself. . . . It also covers Kentucky's counties."); *Yates v. Benningfield*, No. 2012-CA-000154-MR, 2013 WL 781098, *2 (Ky. App. Mar. 1, 2013). Furthermore, KRS § 441.045 does not waive sovereign immunity afforded Hopkins County. *See Jewish Hosp. Healthcare Services, Inc. v. Louisville/Jefferson Cnty. Metro Gov.*, 270 S.W.3d 904 (Ky. App. 2008). Therefore, summary judgment is granted as to Mr. Browder's state law claims against Hopkins County.

### C. Claims Against Jailer Lewis

Mr. Browder sued Jailer Lewis for deliberate indifference to his serious medical needs, failure to train jail staff to recognize his serious medical needs, and failure to implement adequate grievance procedures, along with state-law claims for violation of KRS § 441.045 and 501 KAR 7.140. [DN 1 at 22]. He sued Jailer Lewis in both his official and individual capacities. [*Id.* at 2].

#### i. Deliberate Indifference

To prove a Fourteenth Amendment violation based upon medical care, a pretrial detainee must show that medical staff acted with "deliberate indifference to serious medical needs." *Greene*

6

*v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (citing *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (citing *Harrison v. Ash,* 539 F.3d 510, 518 (6th Cir. 2008)). But an officer that lacks medical training does not act with deliberate indifference if he reasonably defers to a medical professional's advice. *Trozzi v. Lake Cnty.*, 29 F.4th 745, 759 (6th Cir. 2022) (citing *Greene*, 22 F.4th at 608).

First, the official-capacity suit "is treated as though brought against the government itself." *Moncier v. Jones*, 557 F. App'x 407, 409 (6th Cir. 2014) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Because this claim is really against Hopkins County, Mr. Browder had to show that Jailer Lewis was deliberately indifferent to his needs pursuant to a county policy of custom. *Monell*, 436 U.S. at 691. Because Mr. Browder has not provided evidence of any policy or custom relevant to this claim, Jailer Lewis is entitled to summary judgment on it.

For the individual-capacity suit, Jailer Lewis is entitled to summary judgment because he reasonably deferred to WKCH's medical professionals. *See Trozzi*, 29 F.4th at 759. The WKCH doctors and nurses, not Jailer Lewis, decided that Mr. Browder did not need all the medication he requested and that his back condition was not serious enough to require immediate surgery; Jailer Lewis simply refused to override their decisions. [*E.g.* DN 1 at 10]. Jailer Lewis reasonably trusted the judgment of professionals who understood medical matters far better than he did, absolving him of any responsibility for any constitutional violation WKCH's employees may have committed. *See Trozzi*, 29 F.4th at 759.

Mr. Browder is concerned that Jailer Lewis's refusal to override his medical contractor's decisions means that Jailer Lewis is denying him recourse for the WKCH employees' allegedly

7

unlawful conduct, "thus encouraging the continuation of these acts of deliberate indifference." [DN 1 at 25–26]. Mr. Browder's recourse to any acts of deliberate indifference by WKCH employees is to sue them, as he has already done. Jailer Lewis is not a doctor and presumably knows little to nothing about medicine, so it would be inappropriate for him to determine what an inmate's medical needs are.

### ii. Failure to Train

A failure to train officers can give rise to a § 1983 action if the inadequate training amounts to deliberate indifference to the rights of the people the officers interact with. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989). But both for official and individual capacity suits, there must be an underlying constitutional violation by an officer for there to be liability for failure to train. *Smith v. Gallia Cnty. Jail*, No. 21-3620, 2022 WL 102965, at *1 (6th Cir. Jan. 11, 2022); *Hunt v. Applegate*, No. 95-1062, 1996 WL 428399, at *2 (6th Cir. 1996). And supervisors cannot be sued in their individual capacities for failure to train unless they were personally involved in the alleged misconduct. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)). As already stated, Jailer Lewis was not deliberately indifferent and did not personally commit any constitutional violations, and Mr. Browder did not make any claims against any of the Hopkins County Jail staff members that Jailer Lewis allegedly failed to train. Because there are no underlying constitutional violations, Jailer Lewis in entitled to summary judgment on this claim.

### iii. Failure to Implement Sufficient Grievance Procedures

"[T]here is no federal right to an effective prison grievance procedure." *Farmer v. Phillips*, No. 20-5730, 2021 WL 6210609, at *2 (6th Cir. Oct. 19, 2021) (citing numerous cases). Even if there was, it cannot be seriously argued that Jailer Lewis's facility lacked adequate grievance

8

procedures. Mr. Browder used the grievance system to file over a dozen complaints about the medical care he was receiving. [DN 1 *passim*]. These were clearly seen by jail and WKCH employees, as they were responded to each time. [DN 51-2 *passim*]. Mr. Browder appears to argue that Jailer Lewis's refusal to override WKCH's denials of his grievances was akin to having no grievance procedure at all. [*See* DN 57 at 3–4]. But just because Mr. Browder did not like the answers his grievances received does not mean he was unable to make them.

### iv. State Law Claims

Jailer Lewis argues that he is entitled to qualified official immunity on Mr. Browder's state law claims for violations of KRS § 441.045(3),(8),(12) and 501 KAR 7:140. "'Qualified official immunity protects individual public officials or employees who are sued in tort for their good-faith discretionary acts undertaken within the scope of their employment.'" *Hall v. Kenton Cnty., Kentucky*, No. CV21900054WOBCJS, 2022 WL 2442199, at *12 (E.D. Ky. July 5, 2022), *aff'd sub nom. Hall v. Carl*, No. 22-5702, 2023 WL 2553861 (6th Cir. Mar. 17, 2023) (quoting *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 749 (6th Cir. 2015)). Thus, "[w]hether qualified immunity extends to an individual turns on whether their actions – or inactions – were discretionary or ministerial." *Volentine v. Sheehy*, No. 2022-CA-0336-MR, 2023 WL 2052301, at *2 (Ky. App. Feb. 17, 2023). "Discretionary acts are those which involve an exercise of judgment or personal deliberation." *Reece v. Carey*, No. 22-5275, 2023 WL 3003191, at *5 (6th Cir. Apr. 19, 2023). "Ministerial acts are those activities which require obedience to orders, or 'when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.'" *Id.* (citation omitted). In making the determination of whether an act is discretionary or ministerial, the Court looks "to the 'dominant nature of the act.'" *Id.* (quoting *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010)).

9

Here, in response to the motion for summary judgment, Mr. Browder argues that his grievance dated April 11, 2022, clearly articulates his claims based on state law. [DN 57 at 5]. In his grievance, Mr. Browder states that because the jail is utilizing WKCH to provide in-house health care and medications to inmates, WKCH is an arm of the jail and its policies, acts, and inactions of the contractor are that of the jailer and county. [DN 41-2 at 12]. As a result of WKCH's alleged policies created in an effort "to cut costs" and "maximize profits," he did not receive his medications. Finally, in his grievance, he states that "if the jail then refused to address the rights violations of jail medical after being informed, and my requesting help, then the jail is accepting the jail medical provider's policies as its own." [*Id.*]. Essentially, it appears that Mr. Browder argues that Jailer Lewis violated this statute and regulation because he did not override the medical decisions of the medical provider at the jail.

"To the extent that [Jailer Lewis] has any individual duty with respect to medical matters, it is clearly a discretionary decision on his part to rely on the medical judgment of the medical staff," *Hall*, 2022 WL 2442199, at *12, and the Court finds that Jailer Lewis exercised his discretion in determining whether to override the medical decisions of WKCH. Mr. Browder has alleged no facts which would support a finding that such reliance was in bad faith. For these reasons, the Court finds that Jailer Lewis is entitled to qualified official immunity on the state law claims.

### D. Claims Against WKCH

The same analysis that applies to § 1983 claims brought against municipalities under *Monell* also applies to private corporations contracted to provide medical services to inmates. *See, e.g., Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012). So to support a § 1983 against WKCH, Mr. Browder must show that one of its policies or customs violated federal law and caused

10

him harm. *See Monell*, 436 U.S. at 691. He also must show that there was an underlying violation by one of the individual defendants. *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).

### i. Deliberate Indifference

In his Response to WKCH's motion, Mr. Browder said that his claims against WKCH "are not for deliberate indifference nor Respondeat Superior," but for breaching its contract with Hopkins County and "implementation of unconstitutional customs/policies," such as charging him money for medical treatment. [DN 58 at 3]. He says that his "complaints for deliberate indifference are, however, against Whitley [Adams], Leigh [Garrett], and Dr. Scott Wilson, employees of WKC[H]." [*Id.* at 1]. But Mr. Browder sued Dr. Wilson, Nurse Adams, and Nurse Garrett in their individual and official capacities. [DN 1 at 2–3]. Official-capacity claims against the employees of a prison's private medical contractor are claims against the contractor itself. *See Smith v. Davis*, 5:17-CV-P187-GNS, 2018 WL 1341694, at *5–6 (W.D. Ky. Mar. 14, 2018). So, in essence, Mr. Browder *is* suing WKCH for deliberate indifference.

"Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment. An officer violates that right if that officer shows deliberate indifference to [a pretrial detainee's] serious medical needs[.]" *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (internal citations and quotation marks omitted); *see Gist v. Trinity Services Group*, No. 3:22-CV-P270-CHB, 2023 WL 2531735, at *4 (W.D. Ky. Mar. 15, 2023). A pretrial detainee must satisfy two elements for a claim based on deliberate indifference to a medical need under the Fourteenth Amendment: (1) he "had a sufficiently serious medical need and (2) that each defendant acted deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 317

11

(6th Cir. 2023) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)) (internal quotation marks omitted).

Mr. Browder has not put forth sufficient evidence to prove deliberate indifference. He has only submitted his prescription list, a document recommending that he receive back surgery, and a document showing that the nurses denied many of his prescriptions. [DN 45-1; DN 50-1]. He has presented no evidence of anyone's state of mind when they denied him medications or surgery or that anyone perceived an "unjustifiably high risk" to his health. *Helphenstine*, 60 F.4th at 317. In fact, there is no evidence of *any* risk to Mr. Browder's health. Mr. Browder only claims that WKCH's denial of his desired medical care caused him pain and discomfort. [*See* DN 1 *passim*; DN 58 at 2]. Pain alone is not a serious medical need that warrants constitutional scrutiny. *See Boldry v. Gibson*, 4:16-CV-P88-JHM, 2019 WL 1410912, at *6 (W.D. Ky. March 28, 2019) (holding that pain caused by acid reflux is not a serious medical condition, citing several cases holding the same). If Mr. Browder wanted his pain relieved while he was in jail, he could have gotten someone from outside the jail to bring his medications to him and asked his attorney to get him medical leave for his back surgery. [*See* DN 1 at 5, 8, 24].

    **ii. <u>Breach of Contract</u>**

In response to WKCH's motion for summary judgment, Mr. Browder states that his complaints against WKCH are not for deliberate indifference to his serious medical needs, but that they are instead for "breach of the Contract for Medical Services and for implementation of unconstitutional customs/policies."[1] [DN 58 at 3]. Specifically, Mr. Browder asserts claims against WKCH "[f]or use of unconstitutional policies/customs of operating under the guise of contractual provision of health care for Hopkins County Jail Prisoners; when in actuality operating,

---

[1] The Court addresses the claim for "implementation of unconstitutional customs/policies" below.

in the most part, for a profit, and denying medications and necessary medical care . . .; to cut costs and to maximize profits, in violation of indigent inmates' rights as provided by Kentucky 501 KAR 7:140 and KRS 441.045(3), (8)(a), (10), and (12) and U.S. Constitutional Amendment 14 . . . ." [DN 1 at 24].

In as much as Mr. Browder implies that he was a third-party beneficiary of the contract to provide medical services to prisoners between WKCH and Hopkins County, summary judgment is appropriate on this claim as well. In general, "only a party to a contract may bring an action to enforce it." *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005). Under Kentucky law, a third-party, such as Mr. Browder, may only enforce a contract if he is an intended beneficiary, rather than a mere incidental beneficiary. *Granite State Insurance Co. v. Taylor*, No. 4:22-CV-00119-JHM, 2023 WL 3012573, at *3 (W.D. Ky. Apr. 19, 2023); *see also Noe v. Bruce*, No. 320CV00849RGJRSE, 2022 WL 18832096, at *2 (W.D. Ky. July 29, 2022), report and recommendation adopted, No. 3:20-CV-849-RGJ-RSE, 2022 WL 18806204 (W.D. Ky. Oct. 11, 2022) ("A third party may, however, enforce a contract made for his 'actual and direct' benefit.").

Many courts have held that inmates do not have standing to sue on the contract between a department of corrections, a jail, or a detention center and a medical provider. *See Claritt v. Correct Care Sols.*, No. CV 3:20-0544, 2022 WL 282911, at *4 (M.D. Pa. Jan. 31, 2022) (dismissing inmate's breach-of-contract claim because of insufficient factual allegations to show "that there was an express contractual intent to make him a third-party beneficiary of the relevant contract"); *Ferguson v. Corizon Health, Inc.*, No. 1:21-CV-00338-DCN, 2022 WL 60586, at *8 (D. Idaho Jan. 5, 2022) (same); *Farris v. Stepp*, No. 20-CV-02346-DDD-NYW, 2021 WL 5200210, at *5 (D. Colo. Nov. 9, 2021) (same); *Pagliaroli v. Ahsan*, No. CV 18-9683 (BRM),

13

2019 WL 979244, at *4 (D.N.J. Feb. 28, 2019) (same); *see also Montgomery v. Conrad*, No. 3:21-CV-00820, 2022 WL 509111, at *6 (M.D. Tenn. Feb. 18, 2022) (financial services). Mr. Browder has not provided facts in his complaint or other pleadings to support an argument that the contract between WKCH and Hopkins County contains language that would make him an intended beneficiary. As a result, summary judgment on this breach of contract claim is appropriate as well.

### iii. Unconstitutional Policies

Mr. Browder appears to believe that WKCH violated his constitutional rights by charging money for certain medical services, like nurse visits and x-rays. [DN 1 at 5, 24; DN 6 at 6]. He sees his medical bills as evidence of WKCH's "unconstitutional policies/customs of operating under the guise of contractual provision of heath care for Hopkins County jail prisoners; when in actuality operating . . . for a profit[.]" [DN 1 at 24]. He alleges a grand conspiracy where WKCH denied him his medications and back surgery "to cut costs and to maximize profits" in violation of the Fourteenth Amendment. [*Id.*]. But Mr. Browder has not provided any evidence that WKCH denied him his medications just to make more money, and his conclusory allegations are not enough to survive summary judgment. Further, "[i]t is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay." *White v. Cor. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)); *see Mayfield v. Henderson Cnty. Det. Ctr.*, 4:08CV-62-M, 2009 WL 1408251, at *2 (W.D. Ky. May 18, 2009). Mr. Browder received the care he was charged for; he was neither charged for the medications nor the back procedure he did not receive. [DN 1 at 24]. Mr. Browder's belief that it is unconstitutional to charge indigent detainees money for medical care is incorrect.

### iv. Violation of KRS § 441.045 and 501 KAR 7.140

Mr. Browder asserts state law claims for violations of KRS § 441.045 and 501 KAR 7.140 against WKCH as well.[2] [DN 1 at 26]. WKCH did not move for summary judgment on these claims. Accordingly, these claims remain pending.

### E. Claims Against Dr. Wilson

Mr. Brower sued Dr. Wilson for deliberate indifference and "his implementation of the unconstitutional policies/customs of his employer," namely the "policy" of denying his medication requests just to make more money. [DN 1 at 23]. The substance of these federal claims is identical to Mr. Browder's federal claims against WKCH, the entity Dr. Wilson directs. [*See id.* at 23–25]. So, the Court grants summary judgment in Dr. Wilson's favor on Mr. Browder's federal claims against him for the same reasons it grants it in WKCH's favor. Dr. Wilson did not move for summary judgment on Mr. Browder's state law claims for violations of KRS § 441.045 and 501 KAR 7.140. Thus, these claims remain pending.

### F. Claims Against Nurse Adams and Nurse Garrett

Mr. Browder also appeared to move for summary judgment against the two nurses who treated him while he was in jail. [*See* DN 50 at 2–3]. But at the time he made this motion, the nurses had not yet been properly served. [*See* DN 64]. The Court cannot rule on a motion made against parties that were not before it at the time the motion was made, so Mr. Browder's motion is denied with respect to the nurses for that reason. If Mr. Browder still wishes to ask for summary judgment against Nurse Adams and Nurse Garrett, he may refile his motion.

---

[2] WKCH mentions on one occasion in its Memorandum of Law in Support of Defendant's Motion for Summary Judgment that Mr. Browder alleges medical malpractice. However, the Court has reviewed the complaint and the supplement and concludes that Mr. Browder never asserted a state law claim for medical malpractice.

15

### G. *The Court Denies Mr. Browder's Motion to Amend*

The Court previously denied Mr. Browder's motion to substitute out Dr. Scott Wilson as a party and replace him with Nurse Robin Day. [DN 54]. It advised Mr. Browder that such a substitution was not allowed under the rules, and that the only way to get Nurse Day into the case was to file a motion to amend his complaint pursuant to Federal Rule of Civil Procedure 15(a). [*Id.* at 1]. But the Court warned Mr. Browder that such a motion likely would not be granted at this stage. [*Id.*].

Under Rule 15, after the pleading stage has concluded, a party may only amend their complaint with the opposing parties' written consent or the court's leave. FED. R. CIV. P. 15(a)(2). While "[t]he court should freely give leave when justice so requires," *id.*, courts frequently deny leave to amend the complaint when granting it would prejudice the opposing party. "The Sixth Circuit has [] found undue prejudice when the plaintiff files a motion for leave to amend after discovery has closed and a motion for summary judgment has been filed . . . ." *E.g. Greene v. Buster*, No. 6:20-cv-128-HRW-HAI, 2022 WL 943137, at *4 (E.D. Ky. March 9, 2022); *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999) (upholding denial of leave when discovery and dispositive-motion deadlines had passed and plaintiff presented "no justification for the delay"). *But see Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 238 (6th Cir. 2003) (reversing denial of leave to amend because while the district court said discovery had closed before the plaintiff asked to amend the complaint, it had never entered a scheduling order). In *Greene*, the court denied leave to amend the complaint and add a defendant after discovery closed even though that defendant was mentioned in the complaint and "put [] on notice of potentially being added as a defendant." *Greene*, 2022 WL 943137, at *4. The court noted that the plaintiff lacked an excuse for waiting until after the close of discovery to try to add the new defendant, as he had possessed

the video footage showing his potential claim against that defendant for over four months prior to filing for leave to amend. *Id.*

Here, discovery on Mr. Browder's claims surrounding the denial of his medications closed in October 2022 (the Court reopened discovery in August 2023 for it to be had on Mr. Browder's racial-discrimination claims against Nurses Adams and Garrett). [*See* DN 7]. Most of the defendants moved for summary judgment in early December, months before Mr. Browder filed this motion. [DN 51; DN 52]. In fact, Mr. Browder did not even file his failed motion to substitute parties until a week after discovery had closed. [DN 7; DN 43]. Like the plaintiff in *Greene*, Mr. Browder possessed the discovery that gave him notice of a potential claim against the party he now seeks to add long before making any effort to add her; he has possessed his inmate file since August 2022, about two months before filing the motion to substitute. [DN 43; DN 65 at 3]; *see Greene*, 2022 WL 943137, at *4. And the *Greene* plaintiff had his motion denied even though he mentioned the prospective defendant in the complaint, potentially giving him some notice that he could be sued. *Greene*, 2022 WL 943137, at *4. But here, Nurse Day is not mentioned anywhere in the forty pages that make up Mr. Browder's Complaint and Amended Complaint. [DN 1; DN 6]. She did not have any notice that she could be sued until discovery on the claims against her had closed, and she will be prejudiced if forced to join the case at this late juncture.

Further, the Court believes Mr. Browder's motion to amend is futile. Courts need not grant leave to amend "where amendment would be 'futile.'" *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)); *accord Rudometkin v. Commanding Gen., U.S. Army Hum. Res. Command*, No. 3:22-CV-497-JHM-RSE, 2023 WL 4628460, at *2 (W.D. Ky. July 19, 2023). The substance of Mr. Browder's proposed claims against Nurse Day is identical to Mr. Browder's claims against Dr. Wilson and WKCH. As the

17

Court has explained, Mr. Browder did not put forth sufficient evidence to prove deliberate indifference, and none of WKCH's policies are unconstitutional or unlawful. So, Mr. Browder's claims against Nurse Day would fail for the same reasons they fail against WKCH and Dr. Wilson.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that:

1) Defendants' motions for summary judgment [DN 51, DN 52, DN 76] are **GRANTED**. Mr. Browder's state law claims for violations of KRS § 441.045 and 501 KAR 7.140 against WKCH and Dr. Wilson remain pending.

2) Mr. Browder's motion for summary judgment [DN 50] is **DENIED**.

3) Mr. Browder's motion to amend his complaint [DN 61] is **DENIED**.

4) The **Clerk of Court** is **DIRECTED** to terminate Hopkins County and Jailer Lewis from this cause of action.

5) Mr. Browder may **REFILE** his motion for summary judgment against Nurse Adams and Nurse Garrett after completion of discovery.

6) A separate scheduling order will be entered to govern this case.

*[Signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

August 11, 2023

cc: Joe Browder, *pro se*
Counsel of Record